**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

CAROLYN COX ET AL                               CASE NO.  2:23-cv-00318

VERSUS                                          JUDGE JAMES D. CAIN, JR.

CRUM & FORESTER ET AL                           MAGISTRATE JUDGE LEBLANC

**MEMORANDUM ORDER**

Before the court are plaintiffs Carolyn Cox and Dorsey Dutil's Motions to Amend [docs. 46, 48, 59, 67]; Plaintiffs' Motion for Expedited Consideration [doc. 59]; and defendants Crum & Forster Specialty Insurance Company ("C&F"), Guernsey Holdings SDI LA OPCO LLC, and Guernsey Holdings SDI LA LLC's (collectively, the "Guernsey Entities" and with C&F the "Defendants") Motion for Leave to File Under Seal its Unredacted Amended Diversity Jurisdiction Disclosure Statement [doc. 61].

For the reasons that follow, Plaintiffs' Motions to Amend [docs. 46, 48, 59, 67] are **GRANTED** but the Motion for Expedited Consideration [doc. 59] is **DENIED**.  Defendants' Motion to Seal is also **GRANTED** and their Diversity Jurisdiction Disclosure Statement ("DJDS") shall be filed under seal.  Accordingly, the Clerk of Court is also directed to seal the unredacted proposed amendment attached to Plaintiffs' third Motion to Amend [doc. 59, att. 2] that reveals information that is now to be sealed pursuant to Defendants' Motion to Seal [doc. 61].

**I.**
**PLAINTIFFS' MOTION TO AMEND**

On June 5, 2025, Plaintiffs filed a Motion to File First Supplemental and Amended Complaint seeking to add Great American Insurance Company ("GAIC") as an additional

- 1 -

defendant. Doc. 46. In their original Complaint, Plaintiffs asserted this court had subject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332. Doc. 1 at ¶ 8. In their proposed amended complaint, Plaintiffs failed to adequately allege citizenship of both GAIC and the existing defendants, and so the court ordered Plaintiffs to re-file their motion making proper citizenship allegations. Doc. 47. In the same Order, the court also noted Defendants' Diversity Jurisdiction Disclosure Statement ("DJDS") [doc. 8] was equally lacking and ordered them to amend it to properly allege their own citizenship. Doc. 47. Plaintiffs subsequently filed an amended Motion to Amend [doc. 48] but, again, failed to properly allege citizenship of Defendants. Doc. 52, p. 1. Accordingly, this court afforded Plaintiffs another opportunity to cure the deficiency [*id.* at p. 3], which they did through their third Motion to Amend [doc. 59].

In this process, the Guernsey Entities disclosed that their ownership structure was quite complex and that maintaining the privacy of that information was vitally important to their business operations. As such, Defendants subsequently filed the instant Motion to Seal [doc. 61] to protect their DJDS. Although Plaintiffs' third Motion to Amend was filed with the consent of Defendants, the proposed pleading fully discloses the identities of the Guernsey Entities' owners and investors [doc. 59, att. 2, ¶¶ 14-20] which Defendants seek to protect through their Motion to Seal [doc. 61]. Accordingly, Plaintiffs filed yet another Motion to Amend to redact that information. Doc. 67.

Rule 15(a)(2) states that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Thus, Rule 15(a) expresses "a strong presumption in favor of liberal pleading." *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 245 (5th Cir. 1997).

Leave to amend is not automatic; the "decision to grant or deny a motion to amend is in the sound discretion of the trial court." *Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 320 (5th Cir. 1991) (citing *Shivangi v. Dean Witter Reynolds, Inc.*, 825 F.2d 885, 890 (5th Cir. 1987)). However, "unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981) (citing *Lone Star Motor Import v. Citroen Cars*, 228 F.2d 69, 75 (5th Cir. 1961)). Substantial reasons to deny leave include: "1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment." *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (*Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003)).

Plaintiffs' latest iteration of the Motion to Amend was filed while no trial date existed in this matter[1] and before any deadline to amend pleadings accrued. Doc. 67. Plaintiffs were also ordered by this court to file it. Docs. 47 & 52. Further, Defendants do not oppose the motion. Accordingly, as the most recent proposed amended complaint corrects the deficiencies previously highlighted by this court [doc. 47 & 52], there is no reason to deny leave. Considering the policy in favor of granting leave to amend, the court concludes that Plaintiffs should be granted leave to do so in this instance.

The court notes, however, that after Plaintiffs' filed their original Motions to Amend [docs. 46 & 48] and this court ordered Plaintiffs to correct those filings [docs. 47 & 52], but before Plaintiffs filed the instant, operative Motion to Amend [doc. 67], Plaintiffs reached a resolution with C&F and Plaintiffs' claims against C&F were dismissed [doc. 55].[2] Thus, although C&F is included as a named defendant in Plaintiffs' operative amended complaint [doc. 67, att. 2, ¶¶ 1 &

---

[1] This action was continued on June 24, 2025 [doc. 50] and a new trial date has yet to be set.
[2] C&F was officially dismissed on October 7, 2025, sixty days after this Order. Doc. 55.

15], it is neither Plaintiffs' intention, nor should this order be construed, to revive Plaintiffs' claims against C&F or reinstate C&F as a defendant in this matter. The inclusion of C&F in the proposed amended complaint is for the sole purpose of establishing that diversity jurisdiction exists in this matter and did so at its commencement. [3]

With respect to Plaintiffs' Motion for Expedited Consideration, the only basis Plaintiffs provided for this request was that C&F's dismissal was imminent. Doc. 59, p. 2. Plaintiffs' efforts to amend simply seek to add a new defendant to this litigation. This process was delayed by the need for Plaintiffs to properly allege citizenship of all parties to uphold their burden of establishing diversity jurisdiction in this case. While this amendment process has been progressing, the trial and all pretrial deadlines in this case have been continued without date. The court, therefore, sees no reason to expedite consideration, and the motion requesting same should be denied.

## II.
### DEFENDANTS' MOTION TO SEAL

Defendants seek to file their DJDS under seal because they believe the disclosure of the Guernsey Entities' ownership could harm both the Guernsey Entities and those persons who in invest in them.[4] Doc. 61, att. 1, ¶ 8. Specifically, Defendants claim sealing the document is warranted because "[t]he Guernsey Entities privately sell securities under Rule 506(b) of the Securities Act to 'accredited investors,' which include" natural persons whose net worth or income reaches a certain threshold. *Id.* at ¶ 9. Defendants allege the sophistication of these investors allows

---

[3] The burden of establishing federal jurisdiction rests on the party seeking the federal forum, the Plaintiffs in this matter. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001); *Fontenot v. Granite State Insurance Co.*, 2008 WL 4822283, *3 (W.D. La. 2008); *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *see also Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992).

[4] "In tracing the ownership layers for the Guernsey Entities, 82 total owners were identified, with 37 individuals, 28 limited liability companies, 6 corporations, and 11 trusts. Of the 11 trusts, only one met the criteria for an unincorporated entity under *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 136 S. Ct. 1012, 194 L. Ed. 2d 71 (2016). For the 10 remaining traditional trusts, the trustee's domicile was the determining factor for citizenship." Doc. 61, att. 1, ¶ 3 (footnotes omitted).

the Guernsey Entities to sell securities without registering same with the Securities and Exchange Commission ("SEC"). *Id.*  As such, Defendants contend "disclosure of these high-net worth investors creates the tangible risk of them being unilaterally solicited for investments and similar ventures as well as personal targeting, scams, illicit solicitation or other malicious activities." *Id.* at ¶ 10.

Defendants further assert disclosure of theses investors' identities could deter future investment in the Guernsey Entities as these highly sophisticated investors do not want their identities disclosed. *Id.* at ¶ 11.  Defendants also propose this disclosure may lead to both heightened SEC oversight, creating additional burdens on the Guernsey Entities and deterring future investors. *Id.* at ¶ 12.  Finally, Defendants contend disclosure of these individuals' identities would provide the Guernsey Entities' competition valuable insight into the companies' financial backing and strategies.  *Id.* at ¶ 13.  To support these claims, Defendants attach an affidavit of Jacques Grondin, the Brand President and Chief Operating Officer of Guernsey Holdings SDI LA OPCO LLC, attesting to the same. *Id.* at att. 3.  Plaintiffs have consented to this motion. Doc. 61, p. 1.

Federal Rule of Civil Procedure 7.1 states,

> **(a) Who Must File; Contents.**
>
> . . . .
>
> **(2) Parties or Intervenors in a Diversity Case.** In an action in which jurisdiction is based on diversity under 28 U.S.C. § 1332(a), a party or intervenor must, unless the court orders otherwise, file a disclosure statement. The statement must name—and identify the citizenship of—every individual or entity whose citizenship is attributed to that party or intervenor:
> **(A)** when the action is filed in or removed to federal court, and
> **(B)** when any later event occurs that could affect the court's jurisdiction under § 1332(a).

Generally, the public enjoys presumptive access to documents filed on the court's docket. *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 416 (5th Cir. 2021). The court has a "solemn duty to promote judicial transparency" by undertaking "a case-by-case, document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure." *Id.* at 419–20 (internal quotation marks and additional citations omitted). The United States Fifth Circuit Court of Appeals recently summarized the law respecting sealing court records in this circuit:

> The public has a common law right of access to judicial records. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–98 (1978). "Judicial records are public records." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 416 (5th Cir. 2021). Public access serves important interests in transparency and the "trustworthiness of the judicial process." *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 519 (5th Cir. 2022) (quoting *BP Expl. & Prod., Inc. v. Claimant ID 100246928*, 920 F.3d 209, 210 (5th Cir. 2019)). Sealing judicial records is therefore "heavily disfavor[ed]." *Id.*

> This right of access, however, is "not absolute." *Nixon*, 435 U.S. at 598. "Every court has supervisory power over its own records and files," *id.*, and, when appropriate, courts may order that case documents be filed under seal, Fed. R. Civ. P. 5.2(d). To determine whether a judicial record should be sealed, the court "must undertake a case-by-case, document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure." *Le*, 990 F.3d at 419 (internal quotations omitted). Because of the court's duty to protect the public's right of access, the district court must balance these interests even if the parties agree to seal records. *See, e.g., BP Expl. & Prod.*, 920 F.3d at 211–12 ("[P]rivate litigants should not be able to contract [the public right of access] away.... [I]t is for judges, not litigants, to decide whether the justification for sealing overcomes the right of access."). Sealing documents should be the exception, not the rule. *Le*, 990 F.3d at 418.

> [ . . . ]

> That said, public information cannot be sealed. *June Med. Servs.*, 22 F.4th at 520. And the district court must also consider whether alternative measures, such as redaction or pseudonymity, would instead sufficiently protect the privacy interests at issue. *See, e.g., United States v. Ahsani*, 76 F.4th 441, 453 (5th Cir. 2023) (noting that redaction is often, but not always,

"practicable and appropriate as the least restrictive means of safeguarding sensitive information").

*Sealed Appellant v. Sealed Appellee*, No. 22-50707, 2024 WL 980494, at *2–3 (5th Cir. Mar. 7, 2024) (footnotes omitted).  A party's interest in sealing information that competitors would use to its disadvantage can overcome the public's right to access judicial records. *Nixon*, 435 U.S. at 598. Only a specific threat of competitive harm may justify sealing. *Vantage Health Plan v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 451 (5th Cir. 2019).

The Advisory Committee Notes to Rule 7.1(a)(2), however, also specifically recognizes limited circumstances in which the court may limit the disclosure. "As especially relevant here, the Notes contemplate that 'the names of identified persons might be protected against disclosure to other parties when' (1) 'there are substantial interests in privacy;' and (2) 'there is no apparent need to support discovery by other parties to go behind the disclosure.'" *Manssor v. NRRM, LLC*, No. EP-23-CV-00236-DCG, 2023 WL 4093413, at *2 (W.D. Tex. June 20, 2023) (footnotes omitted) (quoting Fed. R. Civ. P. 7.1 note (Advisory Committee Notes to 2002 adoption)).

Defendants have shown good cause to file their DJDS under seal.  Although Defendants do not cite any cases nor could the court find any cases in which a court granted the sealing of a DJDS, the instant case differs from those in which similar motions were denied.[5]  Specifically,

---

[5] *See, e.g., Eures v. Havenpark Mgmt., LLC*, No. 23-184, 2024 WL 1374766 (S.D. Ind. Apr. 1, 2024) (noting that courts throughout the country have consistently held that the 2022 Committee Note does not allow parties to withhold the names of their members simply because those members prefer that their information remain private) (citations omitted); *Mayer v. Patriot Pickle Inc.*, No. 23-1299, 2024 WL 162881, at *5 (W.D.N.Y. Jan. 16, 2024) (recognizing the public's right of access to court documents to deny defendant's request to file Rule 7.1 statement under seal and finding that movant failed to explain how disclosure of the information would protect privacy interests or any details about the privacy interests at stake); *Mann v. Trails Carolina, LLC*, No. 23-20, 2023 WL 5109564, at *2 (W.D.N.C. Aug. 9, 2023) (avoiding issue of whether substantial interest in privacy was satisfied by stated need to ensure safety of its members and/or employees and avoid potentially threatening communications because defendant failed to particularize those concerns); *Driver Opportunity Partners, LP v. Ameriserv Fin., Inc.*, No. 22-237, 2023 WL 4711158, at *3 (W.D. Penn. July 24, 2023) (citation omitted) (citing obligation to make public record as complete as possible, holding that only when substantial privacy interests have been set forth in as detailed terms as possible is omission or an *in camera* inspection appropriate, and finding that "merely asserting a privacy interest without further explanation is hardly the equivalent of articulating a substantial privacy interest in the members' identities" and that plaintiff's "limited partner's preference to avoid disclosure is not a specific, substantial privacy interest"); *Bauer v.*

courts in these previous instances denied motions to seal a DJDS because the moving party failed to provide or explain the specific harm that would occur if the disclosure was not sealed. Unlike the motions in those cases, however, Defendants' instant motion [doc. 61] specifically alleges credible potential harm to both the investors and the Guernsey Entities.

First, as the Guernsey Entities are in a very specific category of SEC exempt business models, they stand to incur different harm than that of other businesses that do disclose certain information to the SEC. By being in this exempt category, it is likely investors are attracted to the Guernsey Entities because their information is not disclosed to the SEC or otherwise. By making the investors' identities public, this business model is jeopardized, potentially harming the Guernsey Entities' ability to raise private capital.

Second, the investors themselves face harm in that disclosure of their identities would make public inferentially either their net worth or yearly income. As the Guernsey Entities only sell securities to "accredited investors" under Rule 506(b) of the Securities Act, each Guernsey Entity

---

*Equinor Energy LP*, No. 21-170, 2023 WL 9595357 (D.N.D. June 27, 2023) (noting that Rule 7.1(a)(2) explicitly requires an LLC to name (not merely list initials and not merely identify the citizenship of) its members and indicating that negative statements that members are not citizens of a particular state are insufficient, particularly given that some persons are considered stateless which likewise destroys diversity); *Manssor*, 2023 WL 4093413 at *2 (denying motion to identify members by initials rather than name on the basis that movant failed to establish both a substantial interest in privacy and no apparent need to support discovery by other parties to go behind the disclosure); *Wilkins v. Tory Burch, LLC*, No. 23-422, 2023 WL 3600084, at *2 (E.D. Mo. May 23, 2023) (denying motion to seal disclosure statement when a defendant "asserted that [the identity of its members was] sensitive information [and] ... that public disclosure of its members' information could harm its business" but "fail[ed] ... to explain why"); *Darton Archery, LLC v. Bowtech, LLC*, No. 23-140, 2023 WL 2755760, at *1 (D. Del. Apr. 3, 2023) (denying motion to seal corporate disclosure statement because defendants failed to explain how the "business interests [of a limited partnership] could suffer harm by the public disclosure of the identity and citizenship of its owners" and noting that "[i]n any event, the public disclosure that an individual has an ownership interest in an entity created by a state cannot be said to constitute a clearly defined and serious injury"); *Wiens Cap. Mgmt., LLC v. Advoc. Consulting Legal Grp., PLLC*, No. 23-81, 2023 WL 2435806 (M.D. Fla. Feb. 16, 2023) (denying plaintiffs' motion to file members' identities under seal or to submit the information for *in camera* review and finding that plaintiffs had not articulated a legitimate privacy interest in their members' identities and that preference for the information to remain private did not overcome the presumption of public access); *Empirian Health, LLC v. Specialty RX, Inc.*, No. 22-639, 2022 WL 17419342, at *2 (M.D. Ala. Dec. 5, 2022) (holding that, absent strong countervailing reasons for protecting the names of such entities and individuals, the name and citizenship of each member of an unincorporated association must be disclosed under Rule 7.1(a)(2)).

investor must fall within a certain net worth or income bracket.[6]  Disclosing this information could therefore pose a risk of unwanted solicitation and targeted activities for these investors.

Third, as Defendants explain [doc. 61, att. 1, ¶ 12], the disclosure of these identities could lead to the perception that the investments themselves are now public and subject to SEC and regulatory oversight.  Again, this would risk stifling the Guernsey Entities' business model as an SEC exempt seller of securities and could lead to additional burdens and costs of complying with regulatory oversight.  This potential for regulatory oversight may also deter potential new investors that were originally attracted by the private placement of these securities.

Finally, Defendants point to specific competitive harm by explaining that the disclosure will give the Guernsey Entities' rivals insights into their financial backing, strategies, and networks. Doc. 61, att. 1, ¶ 13.  This, they maintain, will allow competitors to exploit the knowledge of the Guernsey Entities' investors to their advantage. *Id.*

Rule 7.1(a)(2)'s requirement of a DJDS is "designed to facilitate an early and accurate determination of jurisdiction." Fed. R. Civ. P. 7.1 note (Advisory Committee Notes to 2002 adoption).[7]  The DJDS requirement, thus, is a mechanism created for the court's own benefit and efficiency, not one designed to check the court's integrity or legitimacy like the counterpart Rule 7.1(a)(1) Corporate Disclosure Statement.[8]  Moreover, as noted by the court in *Carr v. IF&P*

---

[6] An "accredited investor" is "[a]ny natural person whose individual net worth, or joint net worth with that person's spouse or spousal equivalent, exceeding $1,000,000 (excluding primary residence)," and "[a]ny natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse or spousal equivalent in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year." Doc. 61, att. 1, ¶ 9 (footnotes omitted) (quoting 17 C.F.R. § 230.501(a)(5)-(6)).

[7] The court notes the Fifth Circuit has recently held that courts may rely on sealed documents to establish diversity jurisdiction. *IFG Port Holdings, L.L.C. v. Lake Charles Harbor & Terminal District*, 82 F.4th 402, 410 (5th Cir. 2023).

[8] A primary purpose of the Rule 7.1 corporate disclosure statement is to allow members of the judiciary to identify financial conflicts of interest.  "[T]he corporate relationships that must be disclosed under Rule 7.1 are those that might warrant a judge's disqualification based on a holding in such an entity." *Domain Prot., L.L.C. v. Sea Wasp, L.L.C.*, 23 F.4th 529, 542 (5th Cir. 2022).  "The information required by Rule 7.1(a) reflects the 'financial interest' standard of Canon 3C(1)(c) of the Code of Conduct for United States Judges." Fed. R. Civ. P. 7.1 note (Advisory

*Holding Co., LLC*, No. CV 22-480, 2024 WL 1675185, at *5 (E.D. La. Apr. 18, 2024), "[i]t is certainly reasonable to expect a plaintiff who voluntarily chooses to file suit in federal court, or a defendant who chooses to remove a case to federal court, to comply with the disclosure obligations of that forum. But in this case, Defendants did not invoke the court's jurisdiction." Here, Defendants did not choose this forum or to subject themselves to its disclosure obligations. These considerations, coupled with the facts of this case, render uncompelling the argument for preserving the public interest in access to Defendants' DJDS.

The court finds Defendants have sufficiently and specifically demonstrated a legitimate interest in maintaining the privacy of their DJDS and explained how disclosure of the information therein poses a real threat of competitive harm. Thus, sealing Defendants' DJDS is warranted in this specific instance.

### III.
#### CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiffs' Motions to Amend [docs. 46, 48, 59 as amended by doc. 67] are **GRANTED**. The Clerk or Court is Directed to file Plaintiffs' latest proposed amended complaint [doc. 67, att. 2] into the record.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Expedited Consideration [doc. 59] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Leave to File Under Seal its Unredacted Amended Diversity Jurisdiction Disclosure Statement [doc. 61] is **GRANTED**.

---

Committee Notes to 2002 adoption). As such, the public has an interest in the availability of corporate disclosure statements, especially insofar as the ethical integrity of the judiciary is implicated. *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021) ("[A]ccessibility enhances legitimacy, the assurance that things are on the level.").

Defendants shall file an unredacted amended Diversity Jurisdiction Disclosure Statement under seal.

**IT IS FUTHER ORDERED** that the Clerk of Court is directed to seal Plaintiffs' unredacted proposed complaint attached to their third Motion to Amend [doc. 59, att. 2] which discloses the information now protected by the sealing order entered herein.

**SO ORDERED** at Lake Charles, Louisiana, this 20th day of March, 2026.

**THOMAS P. LEBLANC**
**UNITED STATES MAGISTRATE JUDGE**